FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CARISSA F.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:21-CV-03148-LRS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT IN PART AND
DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 12, 13.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

represented by Special Assistant United States Attorney Ryan Lu.  The Court,

having reviewed the administrative record and the parties' briefing, is fully

---

[1] The last initial of the claimant is used to protect privacy.

ORDER - 1

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is granted in part and Defendant's Motion, ECF No. 13, is denied.

## JURISDICTION

Carissa F. (Plaintiff) filed for disability insurance benefits and for supplemental security income on March 15, 2016, alleging in both applications an onset date of August 1, 2015.  Tr. 240-52.   Benefits were denied initially, Tr. 140-55, and upon reconsideration, Tr. 158-69.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 6, 2018.  Tr. 37-61.  On June 29, 2018, the ALJ issued an unfavorable decision, Tr. 12-32, and the Appeals Council denied review.  Tr. 1-6.  Plaintiff appealed to the U.S. District Court for the Eastern District of Washington, and on June 2, 2020, the Honorable Stanley A. Bastian remanded the matter for additional proceedings.  Tr. 635-59.

On August 18, 2021, Plaintiff appeared at a second hearing, Tr. 554-94, and on August 25, 2021, the ALJ issued another unfavorable decision.  Tr. 528-53.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 50 years old at the time of the first hearing.  Tr. 48.  She has a GED/high school education.  Tr. 48, 560.  She has training in phlebotomy.  Tr. 48.

She has work experience as a telemarketer, teacher's aide, and a phlebotomist. Tr. 570-71. Plaintiff testified that it is difficult to walk due to pain in her lower back. Tr. 42. She had severe migraines before a spinal stimulator was placed. Tr. 43. She has problems with her hands going numb and tingling. Tr. 43. She cannot hold things, sometimes even a coffee cup will fall out of her hands. Tr. 43. She testified that she cannot lift, and she cannot walk distances due to her lower back and hip pain. Tr. 44. Her lumbar pain is the worst. Tr. 50. She needs to lie down for a few hours during the day, often in a recliner on top of a heating pad. Tr. 50. On a bad day, she can hardly walk and will lie down most of the day. Tr. 51.

At the time of the second hearing, Plaintiff was 54 years old. Tr. 560. She testified that she could not work as a phlebotomist due to her hands shaking and feeling numb. Tr. 571-72. She could not type and could not lift due to pain in her hands, arms, and neck. Tr. 572. She was calling in sick too often. Tr. 572. She could not do her past work as a paraeducator because she has too many days when she cannot get out of bed and she takes opioids. Tr. 572. She cannot stand and walk as demanded by the job, sometimes she needs to sit. Tr. 573.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

ORDER - 4

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

ORDER - 5

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the

claimant is incapable of performing such work, the analysis proceeds to step five.

ORDER - 6

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2015, the alleged onset date. Tr. 534. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc and

facet disease, status post C5-6 discectomy and fusion; status post bilateral carpal tunnel release and right ulnar nerve transposition; and fibromyalgia.  Tr. 534.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 537.  The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> With customary breaks, she can stand and/or walk for four hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can lift and/or carry a maximum of 20 pounds on an occasional basis and ten pounds on a frequent basis.  She can never climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch, and crawl. With the bilateral upper extremities, she can reach, handle, and feel frequently and can finger occasionally.  She must avoid concentrated exposure to hazardous machinery and unprotected heights.

Tr. 538.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work for purposes of her Title XVI claim, but she is capable of performing past relevant work as a teacher aide I for purposes of her Title II claim.  Tr. 546.   At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as router, school bus monitor, and storage facility rental clerk.  Tr. 547.  Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social

Security Act at any time from October 31, 2009, through the date of the decision. Tr. 548.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly assessed Plaintiff's migraines;

2.  Whether the ALJ properly considered Plaintiff's testimony; and

3.  Whether the ALJ properly considered the medical opinions.

ECF No. 12 at 2.

## DISCUSSION

### A.    Step Two - Migraines

Plaintiff contends the ALJ failed to properly consider her migraines by finding them non-severe.  ECF No. 12 at 19.   At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source.  20 C.F.R. §§ 404.1521, 416.921.  A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment.  *Id*.  After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or

ORDER - 9

1    mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

2    However, the fact that a medically determinable condition exists does not

3    automatically mean the symptoms are "severe" or "disabling" as defined by the

4    Social Security regulations.  *See e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*,

5    885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir.

6    1985).

7         The ALJ discussed Plaintiff's allegations of disabling limitations from chronic

8    migraine headaches.  Tr. 534.  In an April 2016 headache questionnaire, Plaintiff

9    alleged she had to be in a quiet and dark room during a migraine and could not eat,

10   talk, or move, or she would vomit.  Tr. 282.  Her most recent migraine had been in

11   February 2016, and she reported migraines occurred every couple of months.  Tr.

12   282.  Symptoms would last an hour to two days with aftereffects that lasted one to

13   two days.  Tr. 282.  The ALJ observed that Plaintiff's own report was that migraines

14   occurred only "every couple months."  Tr. 534.  Medical records in June 2015, July

15   2016, and November 2020 indicate that she reported headaches secondary to

16   cervical pain or injections.  Tr. 407, 428, 797.  In January 2018, she reported her

17   headaches were much improved since having a spinal stimulator implanted in

18   October 2016.  Tr. 509.  She denied headaches in August 2016, June 2018, and

19   March 2019.  Tr. 453, 842, 868.

20        Plaintiff acknowledged her headaches improved after the spinal stimulator

21   was implanted in October 2016, but argues they were disabling from her alleged

onset date of August 1, 2015, until the implant in October 2016.  ECF No. 12 at 20.

Plaintiff cites her own testimony (Tr. 49-50), her headache questionnaire (Tr. 282),

her reports of headaches to providers in May 2015 and July 2016 (Tr. 366, 428) and

her report that she tried acupuncture and chiropractic treatment to relieve them (Tr.

282).

The ALJ reasonably found there is insufficient evidence in the record to

establish headaches as a severe impairment between August 2015 and October 2016.

Tr. 535.  "[W]hile there may not be a laboratory or blood test to confirm a migraine

disorder, and it may be that radiologic studies do not always reveal an objectively-

defined source of migraine pain, it is possible to present objective-like evidence to

establish the severity of the claimed impairment." *Mehrnoosh v. Astrue*, No. CV-10-

52-HZ, 2011 WL 2173809, at *7 (D. Or. June 2, 2011) (citing *Ortega v. Chater*, 933

F. Supp. 1071, 1075 (S.D. Fla. 1996)).  For example, a treating doctor's observations

of any physical manifestations of pain, trips to the emergency room or hospital

admissions for disabling migraine pain, or treatment notes reflecting medical signs

and symptoms such as nausea, vomiting, dizzy spells, blackouts, or photophobia can

establish the severity of a disabling migraine condition.  *See Mehrnoosh*, 2011 WL

2173809, at *7.  Here, there are few physician notes indicating complaints of

migraines and almost no description of symptoms or impact on function.  The ALJ

reasonably concluded Plaintiff's migraines were not a severe impairment.

**B.    Symptom Testimony**

ORDER - 11

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

ORDER - 12

2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found that Plaintiff's pain "has been under mostly stable conservative management with chronic opioid therapy for years," even before the period of adjudication. Tr. 541 (citing Tr. 487, 494, 515). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011). Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). The ALJ Also found that Plaintiff underwent epidural steroid

injections, facet blocks, and targeted spinal injections.  Tr. 541 (citing Tr. 426-57).
She had a spinal cord stimulator implanted but remained on chronic opioid therapy.
Tr. 437, 541.  In October 2017, Plaintiff was very pleased with the result of the
stimulator which provided 90-percent relief of cervical pain.  Tr. 445.  The ALJ
found that since then, the record reflects generally unchanged chronic opioid therapy
with stable symptoms.  Tr. 541 (citing *e.g.*, 795, 815, 839, 859).

Notwithstanding Plaintiff's stability on opioids and improved symptoms from
the spinal cord stimulator, this is not a case involving conservative treatment.  Pain
treatment with opioid analgesics generally is not considered conservative.
*O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019); *see Kager v.
Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (rejecting adverse finding regarding
symptom claims premised on the absence of significant pain therapy where the
claimant took prescription pain medications including narcotic analgesics); *see also
Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (determining narcotic
painkillers along with spinal injections and radiofrequency ablation not
conservative).  Similarly, surgeries, injections and prescriptions for opioid pain
medication are not generally characterized as "conservative" in evaluating a
claimant's symptom testimony.  *See Carlos M. A. v. Kijakazi*, No. ED CV 22-0038-
E, 2022 WL 16894847, at *3 (C.D. Cal. July 11, 2022); *Aguilar v. Colvin*, 2014 WL
3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for
overly conservative treatment when he has been prescribed strong narcotic pain

ORDER - 14

medications"); *Sanchez v. Colvin*, CV-12-4061-SP, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("surgery is not conservative treatment"); *Christie v. Astrue*, CV-10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment that included narcotic pain medication and epidural injections as "conservative"). Furthermore, the ALJ went on to note that "more intensive intervention" began in July 2016, including steroid injections, facet blocks, and targeted injections, which by the ALJ's own description implies more than conservative treatment. Tr. 541. The record does not support the conclusion that Plaintiff's treatment was "conservative." This is not a clear and convincing reason supported by substantial evidence.

Second, the ALJ found that Plaintiff did not engage in other recommended treatments. Tr. 541. Plaintiff's providers suggested other treatments such as physical therapy or behavioral-health treatment improve functioning and pain tolerance so she can wean off chronic opioids. Tr. 541 (citing *e.g.*, Tr. 427, 498.). The ALJ observed that Plaintiff repeatedly declined functional restoration or physical therapy, preferring to continue with opioid treatment or giving other reasons for not starting, such as travel. Tr. 485, 500; 833-34, 837, 839. Symptom claims may be undermined by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, *see e.g.*, 20 C.F.R. § 404.1530(c) (1988); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984), a claimant's failure to assert

one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony. *Fair*, 885 F.2d at 603. The ALJ observed that although Plaintiff testified she could not find a physical therapy provider who took her insurance, the record reflects "little effort to follow up." Tr. 541. It is not clear exactly what this means or what records support the ALJ's conclusion. The ALJ also found attended only two behavioral health sessions in January 2018 and May 2019, suggesting, presumably, that she did not follow up or pursue that treatment. Tr. 541, 511, 833. However, as Plaintiff observes, her provider indicated that following up would be difficult since she lived out of town and the provider was going to be moving to a different clinic. Tr. 834. Plaintiff offers several other reasons for not pursuing physical therapy or functional improvement training such as previous physical therapy made her pain worse, Tr. 483, interruptions due to removal of the cervical stimulator, Tr. 574, the pandemic, Tr. 815, or providers talked about PT in the future, Tr. 507, 830. ECF No. 12 at 17. Some of these excuses for not pursuing physical therapy or behavioral health treatments were not raised before the ALJ and are not particularly compelling. Nonetheless, the ALJ's findings do not constitute a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Plaintiff's activities and abilities are inconsistent with her allegations. Tr. 542. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom

claims.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  In January and March 2018, Plaintiff stated she had been caring for her mother for two years, Tr. 512, 839, and in November 2018, she reported she would be taking her mother to Arizona for two months.  Tr. 852.  The ALJ acknowledged that Plaintiff testified that she was not performing caregiving tasks, only keeping her mother company, but the ALJ found that Plaintiff's activities with her mother indicate greater abilities than alleged regarding standing, walking, sitting, and use of the hands involved in travel, shopping, and cooking.  Tr. 542.

The ALJ also noted that Plaintiff stated she did not want to start physical therapy in May 2019 because she planned to go to the coast with her boyfriend for a month in the summer.  Tr. 542, 833.  Plaintiff told Dr. Drenguis that she could drive for two hours at a time before getting out to stretch; that she could lift 10 pounds; do her own laundry; that she enjoyed coloring books; and was able to get out of the house daily.  Tr. 400.  In June 2016, Plaintiff reported exercising 20 minutes a day, being able to garden for up to an hour, and enjoying coloring books, but she qualified her exercise by indicating it was "not intense enough to be moderate activity," and said she needed frequent breaks for gardening.  Tr. 487.  She enjoyed quilting, gardening, and walking her dog.  Tr. 487.

The ALJ found these activities were inconsistent with Plaintiff's function reports in which she indicated difficulty using her hands for any length of time; that she could not stand for long or tolerate bending; and that she might not be able to get

up in the morning or do more than sit in a recliner with a hearting pad.  Tr. 542; Tr.

300-07.  The ALJ found Plaintiff can use her hands for two hours at a time to

operate the steering wheel and controls of a car; and can use her hands for

recreational coloring, which requires fine manipulation; and Plaintiff can not only

get up but get out of the house.  Tr. 542.  The ALJ concluded these activities are

consistent with light work with the other limitations included in the RFC.  Tr. 542.

Plaintiff argues that the ALJ did not show that her testimony was contradicted

or that she could perform tasks beyond those limitations assessed by Dr. Drenguis

and Dr. Deramo.  ECF No. 12 at 18.  It is noted that the ALJ credited all of the

limitations assessed by Dr. Drenguis, except for the hand-related limitations, which

the ALJ found were somewhat less limiting than Dr. Drenguis opined.  Tr. 543-44;

*see infra*.  To the extent the ALJ's findings were consistent with Dr. Drenguis'

opinion, those findings are supported by substantial evidence.

However, the difference between the ALJ's finding and Dr. Drenguis' opinion

regarding manipulative limitations is the frequency of Plaintiff's ability to reach,

handle, and feel.  Tr. 403, 537-38, 543.  The ALJ did not explain how the daily

activities performed by Plaintiff are inconsistent with the occasional reaching,

handling, and feeling limitation assessed by Dr. Drenguis, or how the record

demonstrates that Plaintiff is actually performing those activities in a frequent

manner.  Plaintiff also correctly points out that the ALJ's statement that Plaintiff

engages in "extended periods" of coloring is not supported by the record and is

speculative.  ECF No. 12 at 18; Tr. 542.  Furthermore, the ALJ did not address waxing and waning of symptoms as set forth in which could potentially account for some of the perceived inconsistencies.  *See* Social Security Ruling (SSR) 12-2p, 2012 WL 3104869 (effective July 25, 2012).  This is a not a clear and convincing reason supported by substantial evidence.

Finally, the ALJ found the objective evidence and medical record is inconsistent with the Plaintiff's alleged limitations.  Tr. 539-41.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ discussed the evidence in detail regarding disc and facet degeneration, carpal tunnel syndrome and ulnar neuropathy, and pain symptoms.  Tr. 539-42.  The ALJ acknowledged objective findings of minimal to moderate multilevel disc degeneration and facet degeneration and some objective physical exam findings of limitation of cervical and lumbar movement, as well as tenderness, but otherwise found the exam findings to be unremarkable or normal.  Tr. 539.  The

ORDER - 19

ALJ concluded findings in the record are not consistent with chronic marked physical limitations or with Plaintiff's allegations of being immobilized with pain half the week, being unable to stand for more than a few minutes, being so limited that she cannot lift a basket of laundry or being unable to move her arms back and forth due to extreme pain.  Tr. 540.  However, because the lack of objective evidence cannot be the only valid reason supporting a finding that the Plaintiff's symptom claims are not fully persuasive, and due to errors in considering Plaintiff's symptom statement discussed *supra*, the ALJ's conclusions are not legally sufficient.

 Additionally, while the ALJ did consider Plaintiff's pain from fibromyalgia throughout the decision, Tr. 542-44, the ALJ did not address the impact of waxing and waning, or good days and bad days, on the objective findings.  *See* SSR 12-2p.  On remand, the ALJ should address Plaintiff's allegations of "good days and bad days" accordingly.

Plaintiff also argued the ALJ should have considered Plaintiff's work history as a factor that "enhances" her credibility.  ECF No. 12 at 19.  The ALJ may consider claimant's work record in evaluating symptom claims.  *Thomas*, 278 F.3d at 958-59.  If the ALJ finds Plaintiff's work history significant in assessing Plaintiff's symptom claims, the ALJ may choose to address it on remand.

C.    **Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[2]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's

---

[2] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

ORDER - 21

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. William Drenguis, M.D.

Dr. Drenguis, an examining physician, completed a physical evaluation in June 2016.  Tr. -03.  He diagnosed fibromyalgia, cervical pain with a history of cervical fusion, low back pain, mild right ulnar neuropathy, mild left carpal tunnel syndrome, and poor balance with a history of Meniere's disease.  Tr. 402.  He assessed functional limitations:  maximum standing/walking capacity of at least four hours with normal breaks; maximum sitting capacity of at least six hours with normal breaks; maximum lifting/carrying capacity of 20 pounds occasionally and 10 pounds frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl; occasionally reach, handle, finger, and feel; limited working at heights and limited by poor balance.  Tr. 403.

The ALJ gave significant weight to Dr. Drenguis' assessment of Plaintiff's lifting and carrying capacity, ability to sit for about six of eight hours, ability to stand/walk for four hours, limitation on postural activities to occasional, and restriction on working at heights.  Tr. 543-44.  The RFC finding is consistent with these limitations and is supported by substantial evidence.  Tr. 537-38.

The ALJ gave some weight to Dr. Drenguis' assessment of manipulative limitations.  Tr. 544.  Dr. Drenguis opined that Plaintiff could *occasionally* reach,

ORDER - 22

handle, finger, and feel; the ALJ found that Plaintiff could *frequently* reach, hand, and feel. Tr. 537-38. The ALJ also found Plaintiff could occasionally finger, consistent with Dr. Drenguis' assessment of the same. Tr. 544.

The ALJ found there are some inconsistencies in Dr. Drenguis's opinion regarding manipulative limitations. Tr. 544. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. The ALJ noted that Dr. Drenguis attributed the sensory findings and indicated manipulative limitations based on mild right ulnar neuropathy and mild left carpal tunnel syndrome, but he made negative findings as to Tinel's, Phalen's, and reverse Phalen's testing. Tr. 402, 544. While Dr. Drenguis found some reduced sensation in the hands bilaterally, the reduced sensation was noted to be reduced specifically in just the right-hand ulnar nerve distribution and the left-hand median nerve distribution. Tr. 402, 544. The ALJ observed that Dr. Drenguis did not explain how this would reduce Plaintiff's overall feeling capacity to occasional. Tr. 544. Dr. Drenguis' exam findings also indicated that Plaintiff could pick up a coin, manipulate a button, tie a bow, turn a doorknob with either hand, and touch her thumb to each finger. Tr. 402, 544. The ALJ also found that the limitation assessed by Dr. Drenguis of only occasional reaching and handling is unsupported by motor testing during the exam, which showed near-normal bilateral grip strength of 4+/5, 5/5 strength in the shoulders and elbows, the ability to make a fist, and normal range of motion through the shoulders, elbows, wrists, and hands. Tr. 401-402, 544.

ORDER - 23

1    The previous District Court remand order found the ALJ "appear[ed] to

2    overlook the reemergence of Plaintiff's symptoms in her upper extremities as a

3    whole," and that Dr. Drenguis' assessment was based on an overall picture of

4    Plaintiff's conditions, including her cervical condition and fibromyalgia.  Tr. 654-55.

5    Here, the ALJ again overlooked the overall picture of Dr. Drenguis' assessment,

6    which takes into account pain from fibromyalgia and the interaction of all

7    impairments.  The ALJ essentially restated Dr. Drenguis' findings yet came to a

8    different conclusion than Dr. Drenguis regarding Plaintiff's manipulative limitations.

9    Tr. 544.  Thus, the ALJ improperly substituted her opinion for Dr. Drenguis'

10   professional interpretation of his findings.  It is improper for an ALJ to act as her

11   own medical expert, substituting her opinion for the opinion of a medical doctor.

12   *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975); *see also Nguyen v. Chater*,

13   172 F.3d 31, 35 (1st Cir.1999) (As a lay person, an ALJ is "not at liberty to ignore

14   medical evidence or substitute his own views for uncontroverted medical opinion";

15   she is "simply not qualified to interpret raw medical data in functional terms.");

16   *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("the ALJ cannot arbitrarily

17   substitute [her] own judgment for competent medical opinion").   The ALJ did

18   consider findings of other providers in the record, noting some found grossly intact

19   sensation to light touch and pinprick, Tr. 410, 431, 544, and others found normal

20   strength and motor function and intact and symmetrical reflexes, Tr. 410, 431, 802.

21   However, none of those records indicate that the findings related specifically to an

ORDER - 24

1    assessment of the hands or fingers and this evidence alone does not constitute

2    substantial evidence contradicting Dr. Drenguis' findings.

3          The other purported inconsistencies regarding Dr. Drenguis' opinion are

4    likewise insufficient.  The ALJ observed that although Dr. Drenguis explained the

5    reaching limitation in terms of Plaintiff's fibromyalgia symptoms, Plaintiff has had

6    little treatment or workup for that impairment during the relevant period.  Tr. 544.

7    However, as noted by Plaintiff, it is unclear exactly what additional treatment or

8    workup for fibromyalgia would be indicated.  ECF No. 12 at 11.  The ALJ also

9    observed that in May 2021, Plaintiff complained of right shoulder pain ongoing for

10   one year and exam findings showed limited range of motion and pain, but there was

11   little or no evidence of abnormal findings of significant duration.  Tr. 544, 790.

12   However, the provider's impression was that Plaintiff's chronic pain syndrome was

13   "worse due to shoulder," Tr. 790, which should have been considered by the ALJ in

14   evaluating the overall effect of fibromyalgia.  Lastly, the ALJ found a limitation to

15   only occasional reaching and gross handling is internally inconsistent with a

16   capacity to lift and carry objects weighing up to 10 pounds on a frequent basis.  Tr.

17   544.  The ALJ compared different functions, and without an evaluation of the

18   technical aspects of each function and authority establishing an inconsistency, this is

19   not a legitimate reason to reject the manipulative limitations assessed by Dr.

20   Drenguis.

21

Based on the foregoing, on remand, the ALJ should reconsider the manipulative limitations assessed by Dr. Drenguis in the context of Plaintiff's other impairments, including cervical pain and fibromyalgia, and the combined effect of all impairments.

### 2. Mark A. Deramo, M.D.

A November 2020 treatment note by Dr. Deramo indicates he had a videoconference consultation with Plaintiff regarding questions raised by disability paperwork. Tr. 797. He listed diagnoses of cervical disc disease/spondylosis, lumbar facet arthropathy/chronic low back pain, and fibromyalgia. Tr. 797. He listed functional limitations including: hard to hold things with right hand, cannot vacuum, cannot walk very far (several hundred feet but not a quarter mile) due to pain; can stand 15-20 minutes, then needs to sit; interferes with sleep; and can lift five pounds for up to 20 seconds. Tr. 797.

The ALJ gave no weight to Dr. Deramo's opinion. Tr. 544, 546. First, the ALJ found the opinion was unsupported by treatment notes. Tr. 546. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ noted that since the November 2020 visit was by videoconference, there were no objective exam findings to support the functional limitations. Tr. 546. The ALJ considered

notes from previous in-person visits with Dr. Deramo but found they do not provide

objective support for the limitations as they reflect few findings beyond vital signs.

Tr. 546, 804-08 (September 2020), 816-19 (March 2020). This is a reasonable

interpretation of the evidence, and this is a specific, legitimate reason for giving little

weight to the opinion.

Second, the ALJ found the statement "is not an objective functional opinion"

but is a recounting of Plaintiff's subjective report of limitations. Tr. 546. A

physician's opinion may be rejected if it is based on a claimant's subjective

complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan

v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at

604. However, the ALJ must provide the basis for the conclusion that an opinion

was more heavily based on a claimant's self-reports than the medical evidence.

*Ghanim*, 763 F.3d at 1162. Here, the ALJ provided the basis for the conclusion, as

Dr. Deramo was not able to perform an exam and make findings during the video

visit, and his exam records do not reflect findings supporting the limitations. Tr.

546. However, as discussed *supra*, Plaintiff's symptom allegations were not

properly considered by the ALJ. For this reason, Dr. Deramo's opinion must also be

revisited on remand.

**D.    Remedy**

Plaintiff argues the proper remedy is to remand for benefits. ECF No. 12 at

21. The decision whether to remand for further proceedings or reverse and award

ORDER - 27

benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ is required to find the Plaintiff disabled if all the evidence is properly evaluated.  Remand is the appropriate remedy. On remand, the ALJ should reassess Plaintiff's symptom claims, including an assessment of the waxing and waning of symptoms due to fibromyalgia.  The ALJ should also reassess the medical opinions, especially regarding manipulative limitations, taking into account the effect of fibromyalgia and all relevant impairments on Plaintiff's manipulative functioning.

ORDER - 28

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED in part**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 27, 2023.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 29